**In re BRIGANTINE BEACH HOTEL CORP.**

**Nos. 10615, 10627, 10690.**

United States Court of Appeals Third Circuit.

Argued March 20, 1952.

Decided June 3, 1952.

Rehearing Denied June 26, 1952.

I. Emanuel Sauder, Philadelphia, Pa., for debtor.

A. David Epstein, Camden, N. J. (Gene R. Mariano, Camden, N. J., on the brief), for receiver.

Morris Bloom, Atlantic City, N. J., for himself as attorney for creditors.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The appeals in Nos. 10,615 and 10,627 concern allowances made in a Chapter XI,

11 U.S.C.A. § 701 et seq., proceeding by the district court to the receiver and to the attorney for certain creditors. The allowances were ordered on October 5, 1951 as one of the results of a prior hearing at which the court had sought in part to determine the amount of money needed for deposit by the debtor under Section 337, sub. 2 of the Bankruptcy Act. 11 U.S.C.A. § 737, sub. 2. No. 10,615 is an appeal by the debtor objecting to both these allowances. No. 10,627 is by the creditors' attorney who complains that the amount given him was inadequate.

The appeal in No. 10,690 is by the debtor from the order of the district court of November 29, 1951 refusing confirmation of the proposed plan of arrangement and adjudging the debtor a bankrupt. The court accepted a petition for rehearing which was considered on the merits, following which the court entered an order on January 28, 1952 denying the petition. This appeal is also from that order.

### Nos. 10,615 and 10,627
### Receiver's Allowance

The debtor had, on January 26, 1951, filed an original petition for arangement of its unsecured debts under Chapter XI, Section 322. 11 U.S.C.A. § 722. These amounted to about $40,000. The appellee Mariano was appointed custodial receiver the same day. The main assets of the debtor consisted of a beach front hotel located in Brigantine Beach, N. J., which was appraised at $160,000 and personal property contained in the hotel appraised at $68,665.-76. There was a first mortgage of $100,000 on the hotel. It was then closed for the winter season and remained closed until about June 1, 1951 when the court permitted its reopening upon terms designed to protect the estate. The operation of the hotel during the 1951 summer season was successful and resulted in a profit of approximately $25,000. When the court directed that requests for allowances be submitted, the receiver filed an amended petition on September 10, 1951 in the amount of $6,604.-66. This sum allegedly represented the

maximum compensation due the receiver under the governing statute. The court allowed the receiver $6,000.

The rate used as a basis for calculating the allowance was that set for operating receivers in Chapter V, Section 48, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 76, sub. a, and is not challenged by any of the parties. The principal amount upon which that rate was applied was $308,183.14 [1] and it included two items which the debtor claims to be erroneous. The first of these is the sum of $228,665.76, representing the valuation of the real and personal property of the hotel. The second contested figure is $47,495.53 consisting of moneys disbursed by the receiver in the operation of the hotel. This was for such routine expenses as food, beverages, services and the like.

We agree with the debtor that the court was in error in including as a basis for calculating the receiver's commissions, in the event of confirmation, the value of the hotel real and personal property which was to be returned to the debtor on the confirmation of the proposed arrangement. With respect to the principal amount to be used in determining the receiver's compensation, Section 48, sub. f provides:

"* * * Such compensation shall be computed upon all moneys disbursed or turned over by him to any persons, including lienholders, upon all moneys to be paid to unsecured creditors upon the confirmation of the arrangement and thereafter, pursuant to the terms of the arrangement, and where under the arrangement any part of the consideration to be paid is other than money, upon the amount of the fair value of such consideration: *Provided, however,* That the court may, in respect to all moneys to be paid to such unsecured creditors after the confirmation of the arrangement, prescribe such time for the payment of the compensation computed thereon as in the particular case may be fair and equitable."

1. Originally this amount totalled $312,-483.14, but certain items were stricken by the court which are not involved in this appeal.

■ It is clear that the word "moneys" in the clause "* * * upon all moneys disbursed or turned over by him to any persons, including lienholders, * * *" is not the equivalent of property. See American Surety Co. v. Freed, 3 Cir., 224 F. 333; In re Detroit Mortgage Corp., 6 Cir., 12 F.2d 889, certiorari denied sub nom. Security Trust Co. v. De Land, 273 U.S. 713, 47 S.Ct. 107, 71 L.Ed. 854; In re Allied Owners Corp., 2 Cir., 79 F.2d 187, affirmed on other grounds sub nom. Callaghan v. Reconstruction Finance Corp., 297 U.S. 464, 466, 56 S.Ct. 519, 80 L.Ed. 804.[2] The receiver relies on the clause in that section which provides that "* * * where under the arrangement any part of the consideration to be paid is other than money, [such compensation shall be computed] upon the amount of the fair value of such consideration: * * *." Here the debtor proposed to pay the unsecured creditors 100% *in cash,* 5% immediately upon confirmation and the balance at stated intervals within twelve months after confirmation. The real and personal property of the hotel which was to be returned to the debtor under the proposed arrangement was no part of the consideration to be paid.

■ Included in the principal amount which the court used as a basis for computing the receiver's allowance in the event of confirmation was a total of $47,495.53 disbursed by the receiver for routine expenditures in the operation of the hotel. These included purchases of food and beverages, payment for heat and light, wages and similar costs. The debtor bases his objection to this sum on a construction of Section 48, sub. f which would limit the receiver to compensation computed solely upon the amount disbursed to unsecured creditors. Such an interpretation would render meaningless the first method of computing the receiver's allowance under Section 48, sub. f, "* * * upon all moneys disbursed or turned over by him to any persons, including lienholders, * *." As a result of the operation of the hotel by

the receiver a profit in excess of $25,000 inured to the estate of the debtor. We think the court properly included the disbursements mentioned. Albers v. Dickinson, 8 Cir., 127 F.2d 957. And see 2 Collier on Bankruptcy (14th ed.) page 1804.

Allowance for attorney for creditors

The allowance of the fee to Morris Bloom, Esq., as attorney for certain creditors was in compensation for his services in a New Jersey state proceeding prior to the institution of this Chapter XI case. He had instituted the suit for the purpose of setting aside a conveyance of the debtor's hotel property. As a result of his action the debtor received a reconveyance of its principal asset. After careful study of the attorney's work the trial court felt that "* * * for the benefit derived by the estate of the debtor and the creditors herein, * * * a fair allowance to Mr. Bloom would be the sum of Seven Hundred ($700.00) Dollars, and it is so ordered."

■■ There is a denial of the facts on which the application is founded, but this is not seriously pressed. Objection is also made on the ground that Chapter VII, Section 64, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(1), does not provide that an attorney acting for creditors be directly compensated for services in recovering for the benefit of creditors property of a bankrupt transferred or concealed. It is conceded in the debtor's brief that the creditors themselves, in a proper case, making the application for fees paid by them to an attorney for such services could obtain their reasonable costs and expenses. In our view the filing of the petition by the attorney himself was a procedural irregularity hardly to be approved but not necessarily fatal to the allowance in the sense that it divested the district court of power to grant it. In re Medina Quarry Co., 2 Cir., 191 F. 815, 817. Under all of the circumstances we think the allowance of a fee to the attorney was within the discretion of the district judge and

2. Collier on Bankruptcy, (14th ed.) Vol. 8, Section 341, takes the view that the receiver's compensation in the event of confirmation cannot be computed upon money or property or other assets returned to the debtor. We think that construction is sound. In re Detroit Mortgage Corp., supra.

further, that the amount allowed was a rightful exercise of that same discretion.

### No. 10,690

The order of October 5, 1951 from which the appeals in Nos. 10,615 and 10,627 arise also provided that the total amount of the fees and expenses allowed, $9,291.45, be deposited by the debtor with the receiver on or before October 5, 1951. October 15, 1951 was designated for final hearing on the confirmation of the plan; on the petition of the first mortgagee to lift the restraint against foreclosing; on the petition by the receiver for an order adjudging the debtor a bankrupt and on a reclamation petition. This hearing was held on the adjourned date, November 16, 1951, following which the district judge on November 29, 1951 made an order (entered the same day) refusing confirmation of the plan, adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of the Act. On December 28, 1951 the debtor filed a petition for rehearing which the court accepted and set down for hearing on the merits. This was had on January 18, 1952, after which the court entered an order on January 28, 1952 denying the petition for rehearing. The debtor filed notice of appeal the same day from the order of November 29, 1951 and from the order of January 28, 1952.

■■ Though no motion for dismissal of the appeal from the order of November 29, 1951 was filed by appellees, the claim is made that the appeal from that order, filed January 28, 1952, was taken too late. There is no doubt that the district court accepted the petition for rehearing. The good faith of the debtor in seasonably urging reargument is not disputed. There is no suggestion that the district court abused its discretion in entertaining the petition or that any intervening rights were prejudiced by that action. Under these circumstances, it is plain that the time for the debtor to appeal from the order of November 29, 1951 was extended, even though the district court reaffirmed its former position, and ran anew from the denial of the petition for rehearing on January 28, 1952. Wayne

United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Bowman v. Loperena, 311 U.S. 262, 61 S. Ct. 201, 85 L.Ed. 177; Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S. Ct. 133, 87 L.Ed. 146. Rule 59(b), 28 U.S. C.A., which generally requires a motion for a new trial to be served not later than ten days after the entry of the judgment has not changed this law. See 2 Collier on Bankruptcy (14th ed.)., page 909 et seq. We think it equally settled, however, that in such a case as this, the debtor's appeal lies only from the original order on November 29, 1951. Here the debtor appealed not only from that order but also from the order of January 28, 1952. The latter order, being merely the denial of the petition for rehearing which had been entertained, is itself not the subject of appeal. Pfister v. Northern Illinois Finance Corp., supra, 317 U.S. at page 149, 63 S.Ct. 133; Klein's Outlet, Inc. v. Lipton, 2 Cir., 181 F.2d 713, 714, certiorari denied 340 U.S. 833, 71 S.Ct. 59, 95 L.Ed. 612; United States v. Muschany, 8 Cir., 156 F.2d 196, 197. Though the debtor has taken this appeal from both orders, we confine our review to the order of November 29, 1951.

■ The debtor's first contention is that the district court was without jurisdiction to enter the November 29th order. The reason stated is that by that date there had been perfected the two appeals by the debtor concerning the allowances to the receiver and to the attorney for creditors, No. 10,615, filed on October 11, 1951 and No. 10,627, filed on October 22, 1951. Accordingly it is urged that jurisdiction of the cause was vested exclusively in this court.

The subject of the pending appeals was the legality of most of the receiver's allowance and all of the allowance to the attorney for the creditors. The appeals did not involve the right of the district court to order the deposit of the disputed items as part of the total deposit required by Section 337, sub. 2. Under former Section 12, 11 U.S.C.A. § 30, dealing with compositions, the court had the right to require that the deposit by the debtor include the confirmation dividend on claims scheduled as

disputed or unliquidated and the court could determine the allowance or disallowance of the claims after confirmation of the composition. In re Everick Art. Corp., 2 Cir., 39 F.2d 765; In re Mirsky, 2 Cir., 32 F.2d 676, certiorari denied Cady, Schapiro & Schapiro v. M. D. Mirsky & Co., 280 U. S. 579, 50 S.Ct. 32, 74 L.Ed. 630. And see Section 369 of the Act, 11 U.S.C.A. §§ 769, subs. 1 and 2. It would indeed be anomalous to hold that the pending appeals deprived the district court of jurisdiction to proceed with the administration of the case if, as we think, the court had the power in the first instance to require the deposit of the total amount of the applications for cost and expenses and to determine the allowance thereof after the time for deposit or even after confirmation of the arrangement. No prejudice to the debtor is apparent and at the same time delay is prevented. Any distribution made upon confirmation to the receiver or to the attorney for creditors would be at best a tentative one, charged with the equity of the debtor to retrieve any portion thereof subsequently disallowed by this court.

We see no reason why the administration of this Chapter XI case should have been paralyzed merely because of the appeals on the allowances. So far as the record discloses, no stay of the proceeding was requested of the district judge before the appeals were perfected, and no such application was made to this court thereafter. It may be argued that no stay was necessary if the judge was without power to proceed as he did, but we fail to see the lack of power. The pending appeals vested this court with exclusive jurisdiction to determine the legality of most of the receiver's allowance and all of the allowance to the attorney for creditors. In re Technical Marine Maintenance Co., 3 Cir., 169 F. 2d 548, 551–552; Diamond Laundry Corp. v. California Employment Stabilization Commission, 9 Cir., 162 F.2d 398, 402; Goggin v. Bank of America National Trust & Savings Association, 9 Cir., 186 F.2d 158, 161–162, certiorari denied 341 U.S. 931, 71 S.Ct. 804, 95 L.Ed. 1360. The entire cause was not thereby removed to this court. Fernow v. Liberty Royalties Corp., 10 Cir., 146 F.2d 396; In re Woodruff, 9 Cir., 121 F.2d 152, certiorari denied 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 522.[3]

The debtor would have this court hold that the district court under the peculiar facts here was without jurisdiction because "To a debtor in trouble, the amount to be deposited by him for fees and other purposes in order to be relieved of his legal difficulties with his creditors is the 'heart' of the case—it may mean continued life or death to the enterprise." In our view the element of hardship of the debtor in securing the deposit required by the Act plays no proper part in determining whether the district court had jurisdiction to proceed with the main stream of the arrangement proceeding. The Act itself provides several means by which any asserted hardship may be alleviated. Section 48, sub. f, 11 U.S.C.A. § 76, sub. f, applicable in event of confirmation, permits the court to defer payment of such part of the receiver's compensation as is based on any moneys which are to be paid to unsecured creditors after confirmation of the arrangement. Further the permission of the court may be secured to use funds of the bankrupt estate for the deposit and it will be remembered that here a profit in excess of $25,000 resulted from the operation of the hotel by the receiver. In addition the Act provides that the debtor may seek an extension of time, Section 313, sub. 3, 11 U.S.C.A. § 713, sub. 3, within which to make the necessary deposit. If after exhausting all of the foregoing the debtor was still having grave

---

3. The inclusion of the value of the hotel property, real and personal, as part of the computation for the receiver's fee was contingent upon confirmation of the debtor's plan. The district court rejected that plan and adjudicated the debtor a bankrupt. It is true that by our above upholding of that action of the district court the receiver's use of the hotel property in his fee calculation becomes academic as far as this case is concerned. Nevertheless we feel it is important that we take this opportunity of specifically pointing out, supra, that such practice is not justified under Section 48 sub. f.

difficulty to secure the necessary deposit, that only lent support to the action of the district judge on November 29th in directing that bankruptcy be proceeded with pursuant to the provisions of the Act.

The only question remaining is whether the district judge was clearly erroneous in refusing confirmation of the plan of arrangement. No issue is presented as to whether under Section 376 of the Act, 11 U.S.C.A. § 776, after refusing confirmation the court should have dismissed the proceedings instead of adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of the Act. After careful examination of the record in this case, we cannot say that the court was clearly erroneous in its order of November 29th, and that order is accordingly affirmed. Where as in the instant proceeding the proposed arrangement had not been accepted by all of the creditors affected thereby, Section 366, 11 U.S.C.A. § 766, sets out the requisites for confirmation. The district judge could not confirm the arrangement unless satisfied as to each and every one of the requisites therein stated. The court first found that the provisions of Chapter XI were not complied with in that the debtor had not deposited the sum required by the order of the court of October 5, 1951. The debtor's answer to this is not that it made the deposit but that there were sufficient funds in the hands of the court, as a result of the operation of the hotel by the receiver, to meet all of the requirements of the plan on confirmation with the exception of the two allowances to the receiver and to the attorney for creditors. We repeat that the debtor should have complied with the order of the court in making the deposit. No appeal was taken from that portion of the order of October 5, 1951 requiring the deposit. The debtor had no absolute right to require that the moneys in the hands of the court be applied to meet the deposit called for by the Act. In addition the court found that the proposed plan of arrangement " * * * is not for the best interest of the creditors and is not fair, equitable and feasible." At the hearing on November 16, 1951, it appeared that the main asset of the debtor, its hotel, was seriously threatened by storm damage which had washed away the sand on the foundation leaving it bare and exposed to the elements. Though previously requested to do so by the court, the debtor offered no plan for the protection of the hotel and could provide no funds or means of financing whereby a bulkhead, admittedly necessary, could be erected to protect the property. The court in the exercise of an independent judgment concluded that the plan was not for the best interest of the creditors. The debtor does not dispute the precarious condition and position of the hotel but asserts that it was not in default in taking care of this for the reason that the amended plan of arrangement made no provision for building a bulkhead. The court necessarily dealt with the actual situation as it existed at the time of the hearing on the plan. The last objection that the court raised as a bar to confirmation was that the plan was not fair, equitable and feasible. Under the proposed arrangement, as amended, the debtor was required to pay a 5% dividend to the unsecured creditors upon confirmation, 20% within six months thereafter and 25% within eight, ten and twelve months following the confirmation. The hearing on confirmation took place November 16th. Thus a 20% payment in the amount of approximately $8,000 would be due the unsecured creditors prior to May 1952. There was no money on hand to meet the second payment required under the plan which would fall due long prior to the time when the hotel could be opened for the summer season of 1952. Upon inquiry by the court it was learned that no one knew where the debtor could obtain the money to meet the second payment. Therefore the court concluded that the plan would not work, i. e., was not feasible. The debtor makes no answer to this. The court seems not to have considered under Section 366, sub. 4 whether the debtor had been guilty of any of the acts which would be a bar to the discharge of a bankrupt, though the question was clearly present in connection with

Bloom's allowance.[4] We do not concern ourselves with this latter point for there was plainly sufficient in the record to warrant the conclusions of the district judge in his order of November 29, 1951.

In No. 10,690 the order of the district court will be affirmed.

In No. 10,615 we have upheld the action of the district court in allowing a fee to the attorney for creditors and in the amount allowed. Payment of that fee must now necessarily be made from the estate of the bankrupt. The receiver's fee must also come from the estate of the bankrupt. That fee will be in such amount as the district court shall allow but in no event to exceed twice the actual rate computed upon the principal sum as set forth in Section 48, sub. a(2). As we have indicated, the moneys disbursed by the receiver in the operation of the hotel may be included as a basis for computation. No. 10,615 will be modified in the above respects and remanded for further action by the district court not inconsistent with this opinion.

In No. 10,627 the appeal will be dismissed.

Frank, Circuit Judge, dissented.

See also 99 F.Supp. 109.

4. So far as the record discloses, neither the district court nor the New Jersey court made an express finding that the debtor had transferred or concealed property in fraud of creditors. We think the transaction which gave rise to Bloom's allowance should have been thoroughly explored, at the very outset, for the court could not possibly confirm the arrangement under 11 U.S.C.A. § 766, sub. 4 if the debtor had been guilty of an act which would bar the discharge of a bankrupt. In this connection, see 11 U.S.C.A. § 32, sub. c (4).