**In re SNYDER.**

No. 3423–M.

District Court, N. D. West Virginia.

April 11, 1945.

See, also, 32 F.Supp. 903.

Hugh S. Byrer, of Martinsburg, W. Va., for farmer-debtor.

Forrest A. Brown, of Charles Town, W. Va., for Forrest A. Brown, trustee.

BAKER, District Judge.

In order to properly understand the question now before the court for decision, a review of the proceedings may be helpful.

John S. Snyder filed his petition and schedules under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on March 25, 1938, and on the following day an order was entered referring the matter to Darrell K. Koonce, the Conciliation Commissioner having jurisdiction of the territory in which Mr. Snyder's farm was located.

On March 3, 1939, the Federal Land Bank of Baltimore filed a petition to dismiss the case, alleging that it held a first lien upon the property which, as of October 28, 1938, amounted to $16,811.49; that the mortgage upon which the lien was based required the debtor to pay taxes on the real estate and to maintain insurance on the buildings, both of which the debtor had failed to do; that the debtor had insufficient stock and equipment to operate the farm, and that the income realized from the farm was not sufficient to keep the same in repair; that the debtor's proposal did not meet the requirements of Section 75, sub. i, of the Bankruptcy Act; and for other alleged irregularities in the proceeding.

Upon April 4, 1939, a hearing upon said petition of the Land Bank was had before me, at which time the debtor requested permission to amend his petition, praying for adjudication as a bankrupt under Section 75, sub. s, of the Act.

Upon August 22, 1939, an order was entered by me dismissing the debtor's petition as not having been filed in good faith. From this order an appeal was taken and on February 10, 1940, a mandate was received from the Circuit Court of Appeals reversing my order of August 22, 1939, and remanding the case for further proceedings. No opinion of the Circuit Court of Appeals accompanied said mandate. It merely stated that it was based upon the decision of the Supreme Court of the United States in the case of John Hancock Mutual Life Insurance Company v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L. Ed. 176, which case had been decided by the Supreme Court of the United States after my order of August 22, 1939.

In accordance with said mandate the amended petition of John S. Snyder, asking to be adjudged a bankrupt under Section 75, sub. s, was filed, and the matter re-referred to Darrell K. Koonce, Conciliation Commissioner.

On June 13, 1940, this order was amended to include an adjudication in bankruptcy.

On December 10, 1940, the Conciliation Commissioner filed a report, fixing the annual rental of the farm at $900 and on June 12, 1941, this rental was confirmed by me.

On June 28, 1941, John S. Snyder petitioned for a rehearing or a reconsideration of the annual rental.

On September 26, 1941, I entered an order fixing the annual rental at $900 and directing that the debtor was to retain possession of the land, and fixing the value of the farm at $15,803.50.

On June 7, 1944, Forrest A. Brown, trustee under a deed of trust securing a second lien upon the property, petitioned for a reappraisement of the land under Section 75, sub. s(3).

On June 24, 1944, a hearing was had before me in open court. Evidence as to the value of the farm was introduced by John S. Snyder and by the lienholders. At the conclusion of that evidence I fixed the value of the farm as of that date at $25,000, and John S. Snyder was given until July 24, 1944, to redeem the property at the value so determined.

On September 26, 1944, John S. Snyder having failed to redeem the property, I entered an order again referring the case to Darrell K. Koonce, Conciliation Commissioner, and directing him to take appropriate steps under the Act to sell the property involved.

The Conciliation Commissioner convened the creditors as provided for generally in Section 44 of the Bankruptcy Act, 11 U.S.C.A. § 72, and Forrest A. Brown was elected and confirmed as trustee to sell the property. On March 3, 1945, Mr. Brown sold the property at public auction to one Elmer E. Roderick, for the sum of $21,500. Of this sum $12,000 was paid in cash on the day of sale, the balance, with interest at 6% per annum, to be paid upon delivery of a proper deed. The trustee reported this sale to the Conciliation Commissioner and asked for an order of confirmation. At the hearing thereon John S. Snyder appeared and asserted that he had a right to redeem the property within ninety days of said sale by paying into court the amount for which the property was sold; that is, $21,500, plus interest at 5%. This right the Conciliation Commissioner denied and directed the trustee to make a proper deed to Roderick. From this order of the Conciliation Commissioner the case comes to me upon review.

Section 75, sub. s(3), contains the provisions of the Act relating to the method of disposing of the property of a farmer debtor who has failed to obtain from his creditors the acceptance of a composition. In my opinion this sub-section breaks down into several distinct parts. In the first place, the debtor is given the right to pay into court the amount of the appraisal of the property of which he retains possession any time within three years and if such payment is made to regain title to his property free of any encumbrances. It then provides that upon the request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property or, after hearing, fix the value thereof. As a protection to lienholders and to meet the objections to the constitutionality of the first Frazier-Lemke Act, the sub-section then provides that upon a request by any secured creditor or creditors the property shall be sold at public auction. The Act continues: "The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest into court, and he may apply for his discharge, as provided for by this title."

The said sub-section then concludes: "If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this title."

It should be noted in this case that from September 26, 1941, until June 24, 1944, the debtor was in possession of his property with a value fixed thereon at $15,803.50. At any time during this period the debtor could have redeemed his land by the payment of that amount into court. From June 24, 1944, until September 26, 1944, the debtor could have redeemed his land by paying into court the sum of $25,000. At no time did the debtor make any offer of redemption. It should also be borne in mind that the sale of this property was not made at the request of any of the secured creditors, but was made upon order of the court.

It is the debtor's contention, however, that the ninety-day redemption period provided for, where the sale is made upon motion of a secured creditor, should also apply where the sale is made by a trustee appointed by the court. With this conclusion I am unable to agree.

Collier on Bankruptcy, 14th Edition, Volume 5, page 227, states: "Appointment of Trustee; Public Sale. As previously indicated, if the debtor fails to comply with the provisions of § 75, or any orders of the court pursuant thereto, and is unable to redeem the property at the appraised or reappraised value—or, if he has fully complied with all provisions and orders but has been unable to refinance himself at the end of the three-year moratorium so that he cannot redeem at the appraised or reappraised value—then, 'the court may order the appointment of a trustee, and order the property sold, or otherwise disposed of as provided for in this Act.' The appointment of the trustee should be made by the creditors according to the precepts of § 44 of the Bankruptcy Act, at a meeting of the creditors duly called by the conciliation commissioner for that purpose."

The text further, after discussing other matters, adds this: "Nevertheless, in these situations it would appear that the 'sale' called for by § 75 [sub.] s(3) is a sale by public auction with the usual features attendant on such a sale."

The usual features attendant upon a sale in bankruptcy do not include any right of redemption in the debtor. I feel that reasons of public policy dictate that such right of redemption should not be included since the existence of the right would be bound to affect adversely the price such property would bring. No purchaser at a public auction would be willing to bid as much for property if he knew the bankrupt had the right within three months to redeem such property, as he would if he were obtaining a clear title upon payment of the amount bid. Where the secured creditor requests the sale, the Act specifically gives this right of redemption and the secured creditor would have to consider, in determining whether or not he should ask for a sale, the fact that such sale would be made subject to such right. However, in the instant case, the sale was by order of the court, not upon request of a creditor, and I think it was encumbent upon the court to direct that the sale be made in the manner which would realize the greatest possible return for the property.

Counsel for the farmer debtor, in arguing this question before me, placed his entire reliance upon the language of the Supreme Court of the United States in Wright v. Union Central Life Insurance Co. et al., 311 U.S. 273, on pages 281 and 282, 61 S.Ct. 196, on page 201, 85 L.Ed. 184, wherein the Court said: "The majority of the Court is of opinion that except for the modification we have indicated the order for sale should stand with the privilege of the respondent mortgagee to purchase at the sale and to receive credit for the indebtedness of the debtor in satisfaction of the purchase price *and with the privilege of the debtor to redeem within ninety days upon payment of the sales price and interest thereon, as provided by § 75, sub. s(3) of the act.*" (Italics mine.)

Considered by itself this language would at first appear to indicate that the Supreme Court agrees with the construction of the Act contended for by the debtor. Therefore, I feel that I should set forth the reasons why I do not believe the Wright case is controlling in the instant case.

In the Wright case a farmer-debtor had been adjudged a bankrupt pursuant to Section 75, sub. s. Subsequently, a mortgage creditor petitioned the bankruptcy

court for an immediate sale of the property, alleging that the debtor's financial condition was beyond all reasonable hope of rehabilitation, and that he had failed to comply with the provisions of Section 75, sub. s(3), and orders of the court pursuant thereto. The debtor answered and filed a cross-petition under Section 75, sub. s(3), requesting a reappraisal of the property or that its value be fixed by the court after hearing, and that he be allowed to redeem at the value so determined, and to be discharged from liability on account of any deficiency. Upon hearing the court found the value of the property, but ordered its sale without affording the debtor an opportunity to redeem at that value. It should here be noted that this sale was ordered at the request of a mortgage creditor. Under this situation the Supreme Court held that the prayer of the cross-petition should have been granted, that the debtor was entitled to have the property reappraised or a value fixed at a hearing, and that the value having been thus determined he was entitled to have a reasonable time in which to redeem; that a public sale could be made only after such opportunity of redemption.

In the course of the opinion the court, speaking by Mr. Justice Douglas, said (311 U.S. 275, 276, 61 S.Ct. 198, 85 L.Ed. 184): "The narrow issue presented by this petition for certiorari and which moved us to grant it is whether under § 75, sub. s(3) the debtor must be accorded an opportunity on his request, to redeem the property at the reappraised value or at a value fixed by the court before the court may order a public sale."

The court later continued (311 U.S. 277, 61 S.Ct. 199, 85 L.Ed. 184): "We think that the denial of an opportunity for the debtor to redeem at the value fixed by the court before ordering a public sale was error."

It seems, therefore, plain to me that when the court stated that the debtor should have the privilege to redeem within ninety days upon payment of the sale price and interest thereon, the court was referring to a situation such as was then before it and was not intending to hold that the ninety-day redemption period should apply to all sales made under the provisions of Section 75, sub. s(3).

This conclusion is strengthened by the language used by the court in the very paragraph in which such right of redemp-

tion is mentioned, in which it is said: "The majority of the Court is of opinion that except for the modification we have indicated the order for sale should stand * * *." 311 U.S. 281, 61 S.Ct. 201, 85 L.Ed. 184.

The order of the Conciliation Commissioner complained of is, therefore, affirmed. The trustee should prepare and deliver to the purchaser of the property a proper deed upon receipt of the full purchase price, together with interest at 6% per annum. The Conciliation Commissioner should then wind up this case. In this connection the Conciliation Commissioner is directed to consider any allowances for proper fees to counsel for the respective parties, and to report to this court all action taken by him under the prior order of rereference.